UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 5:24-CV-00195-FDW

| | |
|---|---|
| JEREMY GOODWIN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>COMMISSIONER OF SOCIAL SECURITY, )<br>)<br>Defendant. )<br>) | **ORDER** |

**THIS MATTER** is before the Court on Defendant Commissioner of Social Security's Motion for Extension of Time to File Brief, (Doc. No. 8), wherein he asks this Court for an additional thirty days to file his brief. Plaintiff Jeremy Goodwin does not oppose the Motion. (Id.) For the reasons stated therein, the Commissioner's Motion is retroactively GRANTED, and the Court considers Defendant's filing, (Doc. No. 9), as timely.

This matter is also before the Court on Plaintiff's Brief, (Doc. No. 6), and the Commissioner's Brief, (Doc. No. 9). Plaintiff did not file a Reply. Thus, this matter is ripe for ruling. Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on his application for Period of Disability and Disability Insurance Benefits ("DIB"). Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, Plaintiff's Motion for Summary Judgment, (Doc. No. 6), is GRANTED; the Commissioner's request to affirm its final decision, (Doc. No. 9), is DENIED; and the Administrative Law Judge's ("ALJ") decision is REMANDED.

I. BACKGROUND

1

On December 6, 2021, Plaintiff filed an application for DIB, alleging his disabling conditions started on September 30, 2019. (Tr. 262.) Plaintiff's claim was initially denied on January 27, 2022, and upon reconsideration on April 21, 2022. (Tr. 132, 144.) Thereafter, Plaintiff filed a request for a hearing. (Tr. 149.) A hearing was held before ALJ Harris on March 30, 2023. (Tr. 10.) However, ALJ Harris retired prior to deciding Plaintiff's case. (Id.) As such, a second hearing was held before ALJ Cavadi on February 7, 2024.[1] (Tr. 10, 70.) On March 20, 2024, the ALJ issued an unfavorable decision, finding Plaintiff was not "under a disability, as defined in the Social Security Act, at any time from September 30, 2019, the alleged onset date, through September 30, 2021, the date last insured . . . ." (Tr. 25.)

During the five-step sequential evaluation process for determining whether an individual is disabled under the Act, the ALJ found, at step one, Plaintiff had not engaged in substantial gainful activity form the alleged onset date, September 30, 2019, through his date last insured of September 30, 2021. (Tr. 12.) At step two, the ALJ found Plaintiff suffered the following severe impairments: left hearing loss, post-traumatic stress disorder, lumbar spine disc protrusion, history of gunshot wound to the right leg, headaches, anxiety disorder, obesity, and depression disorder. (Id.) Third, at step three, the ALJ found Plaintiff does not have an impairment, or combination thereof, that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13.) At step four, the ALJ concluded Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) except no frequent stooping. (Tr. 15.) Plaintiff can understand, remember, and carry out detailed, but not complex instructions; engage in simple, routine, and repetitive tasks; and focus on tasks that are learned by demonstration in thirty days or less for two hours at a time. (Tr. 15–16.) However, the

---

[1] When referencing Plaintiff's case in this Order, the use of the term "ALJ" refers to ALJ Cavadi, not ALJ Harris.

ALJ concluded Plaintiff could not have quotas or contact with the public but may occasionally have contact with his supervisors and coworkers. (Tr. 16.) The ALJ also concluded Plaintiff may have routine changes in his environment, work in moderate noise levels, and occasionally use foot pedals. (Id.) Finally, at step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and found "there are jobs that exist in significant numbers in the national economy" Plaintiff could perform. (Tr. 24–25.) The ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from September 30, 2019, through the date he was last insured, September 30, 2021. (Tr. 25.)

Plaintiff appealed this decision to the Appeals Council, who affirmed the ALJ's decision on July 5, 2024. (Tr. 1.) Since the Appeals Council denied Plaintiff's subsequent request for review of the ALJ's, decision, it became the final decision of the Commissioner. (Id.) Plaintiff has exhausted all administrative remedies and now appeals to this Court pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g), limits this Court's review of the Social Security Commissioner's final decision to whether (1) substantial evidence supports the Commissioner's decision and (2) the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Perales, 402 U.S. 389, 401 (1971). "Under the Social Security Act, [courts] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citations omitted). A reviewing court may not reweigh conflicting evidence or make credibility determinations because "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's

function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays, 907 F.2d at 1456.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (quoting Craig, 76 F.3d at 589). "It 'consists of more than a mere scintilla of evidence but may be less than a preponderance.'" Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (quoting Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012)). We do not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," courts defer to the ALJ's decision. Johnson, 434 F.3d at 653 (quoting Craig, 76 F.3d at 589).

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212, 212 (4th Cir. 2017) (per curiam) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520. Pursuant to this five-step process, the Commissioner examines whether the claimant: "(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy." Id. (citing (citing 20 C.F.R. § 404.1520); see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

### III.     ANALYSIS

4

Plaintiff's only argument on appeal is the ALJ erred by failing to account for the vocationally limiting effects of his migraines. (Doc. No. 6, p. 4.) The Commissioner disagrees, asserting the ALJ properly evaluated Plaintiff's migraines and the ALJ's RFC determination accounted for Plaintiff's migraines and is supported by substantial evidence. (Doc. No. 9, p. 8.) For the reasons stated below, this Court agrees with Plaintiff.

In order for this Court to engage in a substantial evidence review, the ALJ must establish a record for his ruling. Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). "The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Id. (citing Hines v. Bowen, 872 F.2d 56, 59 (4th Cir.1989)); cf. Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (holding the record should "build an accurate and logical bridge from the evidence to the [ALJ's] conclusion" (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000))). "[A] proper a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion. The second component, the ALJ's logical explanation, is just as important as the other two." Thomas v. Berryhill, 916 F.3d 307, 311 (4th Cir. 2019), as amended (Feb. 22, 2019). The Fourth Circuit has made clear this Court's "meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." Id. (citation omitted).

Plaintiff cites to Woody v. Kijakazi, No. 22-1437, 2023 WL 5745359 (Sept. 6, 2023), to support his argument. In Woody, the Fourth Circuit held the ALJ failed to adequately explain how the RFC's limitations accounted for plaintiff's severe headaches which caused her to frequently miss work. Woody v. Kijakazi, No. 22-1437, 2023 WL 5745359, at *1 (Sept. 6, 2023). The Fourth Circuit explained,

> [t]he vocational expert testified a hypothetical person would be precluded from maintaining full time employment if she were absent more than once a month. The

record shows that, even after receiving treatment that reduced the frequency of her headaches, Woody still reported getting headaches about once a week. And although Woody told her physicians the severity of her headaches had lessened with treatment, the record does not establish whether her headaches nevertheless remained severe enough to cause her to be absent from work when they occurred. The ALJ did not make specific factual findings on that point. The ALJ's failure to reach an "express conclusion in the first instance" on the potentially dispositive issue of whether the frequency and severity of Woody's headaches would cause her to be absent from work more than once a month—or to explain how, despite any potential absences, the evidence supported his finding that the limitations included in the RFC sufficiently accounted for Woody's impairments—is an error of law that necessitates remand.

Id.

Although Woody is an unpublished case, we agree with our sister courts Woody's reasoning is persuasive. See Keech v. O'Malley, No. 4:23-CV-139-M-KS, 2024 WL 3370817, at *3 (E.D.N.C. May 10, 2024), report and recommendation adopted, No. 4:23-CV-00139-M, 2024 WL 3363563 (E.D.N.C. July 9, 2024) ("The ALJ's failure to make specific findings regarding the frequency of Plaintiff's migraines is only exacerbated by the mischaracterization of Plaintiff's testimony and by the ALJ's apparent crediting of certain aspects of Plaintiff's statements about his migraines and not others."); Strader v. O'Malley, No. 5:22-CV-367-M-BM, 2024 WL 796523, at *6 (E.D.N.C. Feb. 2, 2024), report and recommendation adopted, No. 5:22-CV-00367-M-BM, 2024 WL 779225 (E.D.N.C. Feb. 26, 2024) ("Because the ALJ's written decision lacks any discussion of whether or how the RFC accounts for Plaintiff's migraines, the ALJ fails to build an accurate and logical bridge from the evidence to his apparent conclusion that Plaintiff did not require any limitations to account for her migraine headaches in the RFC." (citation modified) (quotation omitted)); John F. M. v. Kijakazi, No. CV 1:23-1126-SVH, 2023 WL 6057500, at *17 (D.S.C. Sept. 18, 2023) ("Although the ALJ provided a lengthy explanation to support her finding that Plaintiff's migraines were non-severe, she failed to resolve conflicting evidence as to the frequency and duration of Plaintiff's migraines and their limiting effects.").

6

Here, the ALJ simply listed evidence regarding Plaintiff's migraines but failed to resolve the conflicting evidence regarding the frequency and severity of Plaintiff's migraines. The ALJ found Plaintiff experienced "headaches about four to six days per week that could last at least three hours . . . ." (Tr. 16.) The ALJ noted providers reported Plaintiff's symptoms were stable with medicine but, at the same time, noted Plaintiff reported his medication and Botox treatments did not resolve the migraines. (Tr 16, 18.) The ALJ further found in July 2021, Plaintiff reported he was having "frequent headaches" and at an August 2021 neurology visit, Plaintiff reported "headaches with nausea and vomiting that . . . [could] be extremely severe and are not always relieved by sleep."[2] (Tr. 18.) Despite these findings, the ALJ then concluded Plaintiff's migraines improved with treatment and Plaintiff could perform light work with limited environmental irritants due to Plaintiff's migraines. (Id.)

These findings of fact by the ALJ fail to "build an accurate and logical bridge from the evidence [regarding Plaintiff's migraines] to the [ALJ's] conclusion" Plaintiff could perform light work but avoid environmental irritants. Monroe, 826 F.3d at 189 (quotation omitted). Here, as in Woody, the hearing transcript shows the Vocational Expert testified an individual cannot maintain full-time employment if he misses more than one day per month of work or is consistently off task for more than fifteen percent of an eight-hour shift. (Tr. 103–05.) The record shows Plaintiff suffered migraines four to six days a week which lasted a minimum of three hours. (Tr. 16.) The record further establishes Plaintiff's migraines did not improve with treatment, could be "extremely severe[,]" did not always improve with sleep, and were accompanied by nausea and

---

[2] Although the ALJ also found Plaintiff denied myalgias or headaches on January 12, 2023, this finding is outside of the period of review which, for Plaintiff's case, was the date of alleged onset of disabilities, September 13, 2019, to the date he was last insured, September 30, 2021. (Tr. 18, 25.); see Dexter v. Kijakazi, No. 3:21-CV-164-MOC, 2022 WL 821075, at *1 (W.D.N.C. Mar. 17, 2022) (finding the relevant period for review was plaintiff's alleged onset date to the date last insured).

vomiting. (Tr. 18.) Assuming best case scenario where Plaintiff is only away from work three hours a day, four days a week due to a migraine, he would still be off task more than fifteen percent of his workday. See John F. M. v. Kijakazi, 2023 WL 6057500, at *17. The ALJ made no express finding on the "potentially dispositive issue of whether the frequency and severity of [Plaintiff's] headaches would cause [him] to be absent from work more than once a month" or more than fifteen percent of his workday besides making the unsupported statement Plaintiff's headaches improved with treatment. Woody, 2023 WL 5745359, at *1. Furthermore, the ALJ's conclusion Plaintiffs RFC permits him to do light work with the limitations of simple instructions, no stooping or contact with the public, occasional contact with coworkers and supervisors and use of foot pedals, moderate nose levels, reduced focus time, and no quotas does not address the frequency or severity of Plaintiff's migraines. Thus, based on the foregoing, this Court finds the ALJ did not provide the explanation or evidence necessary to supports its determination Plaintiff could perform light work with environmental limitations.

**IT IS THEREFORE ORDERED** that:

1. The Commissioner's unopposed Motion for an Extension of Time to File Brief, (Doc. No. 8), is retroactively **GRANTED**, and the Commissioner's Brief, (Doc. No. 9), is considered timely filed; and

2. Plaintiff's Motion for Summary Judgment, (Doc. No. 6), is **GRANTED**; the Commissioner's request to affirm its final decision, (Doc. No. 9), is **DENIED**; and the Administrative Law Judge's ("ALJ") decision is **REMANDED**.

**IT IS SO ORDERED.**

Signed: September 24, 2025

Frank D. Whitney
Senior United States District Judge